# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.

Rochelle Freeman,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 17-153(5) ADM/DTS

_____

LeeAnn K. Bell, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Michael C. Hager, Esq., Hager Law Office, Minneapolis, MN, on behalf of Defendant.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Rochelle Freeman's ("Freeman") Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1) [Docket No. 481] ("Motion"). For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

On June 22, 2017, a grand jury charged Freeman and six co-defendants with conspiracy to distribute 280 grams or more of cocaine base and heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Indictment [Docket No. 1]. Freeman was initially allowed to remain out of custody on pretrial release. Order [Docket No. 21]. In June 2018, her release status was revoked after she was arrested on a state court charge of second degree assault for striking her former boyfriend with her car. Revised Presentence Investigation Report ("PSR") [Docket No. 308] ¶¶ 10, 104; Order [Docket No. 264].

On November 30, 2017, Freeman entered a plea of guilty to conspiracy to distribute 280 grams or more of cocaine base and heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Min. Entry [Docket No. 156]; Plea Agreement [Docket No. 157]. In the Plea Agreement, Freeman admitted that she served as a connection between a source of supply and co-conspirators for cocaine, typically arranging purchases of nine ounces at a time. Plea Agreement at 2. She also admitted that at a meeting she had arranged between a supply source and co-defendants Dantrell Myles ("Myles") and McClendon Miller ("Miller"), Myles robbed the source at gunpoint and drove away with Miller. Id. Later that day, Freeman posted a social media video of herself riding in a vehicle with Miller. She was wearing the same clothes she had worn during the robbery and holding a semiautomatic handgun in her lap. Id.; PSR ¶ 19. The caption to the post read: "Fall off she gon hold it down please believe . . . Firearm we roll around these streets . . ." PSR ¶ 19.

Freeman was sentenced in September 2018 to a mandatory minimum term of 120 months. Min. Entry [Docket No. 321]; Sentencing J. [Docket No. 323] at 2. The sentence reflected a downward variance of over five years from the applicable sentencing guideline range of 188 to 235 months. Statement Reasons [Docket No. 324] at 1, 4.

Freeman is currently incarcerated at the federal correctional institution in Waseca, Minnesota ("FCI–Waseca") and has completed approximately one third of her sentence. Her projected release date is March 21, 2027. See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 4, 2021).

While in custody, Freeman has taken several educational courses, completed a drug treatment program, and has participated in mental health classes. Mot. Ex. [Docket No. 481,

Attach. 1] at 1.  She also works full time for Unicor and has written a novel that she hopes to have published.  Id.; Letter Ex. [Docket No. 482, Attach. 1] at 2.

Freeman has incurred three disciplinary violations—one for bribing a staff member in September 2019, another for engaging in mail abuse in March 2020, and a third in December 2020 (less than five months ago) for writing a letter to introduce narcotics into the facility.  Def. Second Sealed Ex. [Docket No. 498] at 4.  All three incidents were sanctioned with lost good time credits.  Id.

In April 2021, Freeman was offered the Moderna vaccine for COVID-19, but she refused to be vaccinated.  See Gov't Ex. 3 [Docket No. 503].

Freeman now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Freeman, age 32, argues that she suffers from obesity, and that this medical condition increases her risk of severe illness or death from COVID-19.

Freeman also argues that her family circumstances warrant her release because she is the only parent for her three young children, ages 14, 7, and 2.  Def. Sealed Ex. at 1.  She fears that her 69-year-old grandmother, who provides care for her children, might contract COVID-19 and die from the virus.  Id.  Freeman also worries that her two younger children might be at risk for severe illness or death from COVID-19 because they were born prematurely.  Id.  She further states that if she herself were to contract COVID-19 in prison and die, her children would be without a parent.  Id.

Freeman contends that the combination of her health, family circumstances, and efforts toward rehabilitation constitute extraordinary and compelling reasons for her release.

3

The Government opposes the Motion, arguing that Freeman has not exhausted her administrative remedies. The Government further argues that even if the Court should reach the merits, the Motion should be denied because Freeman has not shown extraordinary and compelling reasons to reduce her sentence, she poses a danger to the community, and the sentencing factors weigh against her release.

### III. DISCUSSION

**A. Legal Standard**

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing sentence reductions under § 3582(c)(1)(A) defines "extraordinary and compelling reasons" to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). "Extraordinary and compelling reasons" also include family circumstances in which the caregiver of the defendant's minor children has died or become incapacitated, or where the defendant's spouse or registered partner is incapacitated and the defendant is the only available caregiver. U.S.S.G. § 1B1.13

comment n.1(C). A catch-all provision also exists for "other reasons" that may cause a defendant's case to be extraordinary or compelling. U.S.S.G. § 1B1.13 comment n.1(D).

The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A). U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

**B. Analysis**

**1. Exhaustion**

Freeman has satisfied the exhaustion requirement because she filed a request for release with the warden of her facility based on her concerns about her health and the care of her children during the pandemic, and the request was denied. Def. Sealed Ex. [Docket No. 494]; Def. Ex. [Docket No. 481, Attach. 1] at 1. Her Motion is therefore ripe for review.

**2. No Extraordinary and Compelling Circumstances**

When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." United States v. Miland, No. 16-0159 (WMW), 2020 WL 3249259, at *3 (D. Minn. June 16, 2020) (quoting United States v. Feiling, No. 3:19-112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)); accord United States v. Ramirez, No. 17-10328 (WGY), 2020 WL 2404858, at *3 (D.

Mass. May 12, 2020); United States v. Shamilov, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Freeman argues she is particularly susceptible to COVID-19 because she suffers from obesity. The CDC's guidelines state that obesity increases the risk of severe illness from COVID-19. See CDC, Coronavirus Disease 2019, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 4, 2021). Freeman's body mass index ("BMI") is 38.9, which meets the Centers for Disease Control and Prevention's ("CDC") definition of obesity (BMI over 30). Id.; Def. Sealed Ex. at 41, 170.

Although Freeman's obesity places her at greater risk for severe illness from COVID-19, this risk is not compelling given her refusal to receive the vaccine. COVID-19 vaccines are safe and effective at preventing COVID-19, and also protect against serious illness from COVID-19. CDC, COVID-19, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited May 4, 2021). Freeman declined the opportunity to reduce her risk by declining to receive the vaccine. Given her refusal to take this significant preventative measure, Freeman cannot now claim that her risk of contracting the virus constitutes an extraordinary and compelling reason for her release. See United States v. McBride, No. 519CR07, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (denying compassionate release for defendant with type 2 diabetes because "[d]efendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison"); United States v. Gonzalez Zambrano, No. 18-CR-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although

defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them.").

Freeman's desire to care for her three children is also not an extraordinary and compelling reason to reduce her sentence. The Court is sympathetic to the hardship that her family is suffering while she is incarcerated, particularly given the ages of Freeman's children and the amount of time they will be separated from their mother.[1] Sadly, however, "hardship on the family almost always results from serious criminal conduct, and rarely rises to the level of extraordinary and compelling." United States v. Mojica, No. 19-CR-629, 2020 WL 6746478, at *1 (S.D.N.Y. Nov. 16, 2020). Freeman's children are being cared for by her grandmother and aunt. Def. Ex. at 1; Compass. Release Investig. [Docket No. 486] at 1. Given the recent progress in vaccine availability, her concerns that these caregivers might contract COVID-19 and die are merely speculative and are not a basis for relief.

Freeman also argues that her rehabilitation, in combination with her health and family circumstances, constitute extraordinary and compelling reasons that warrant her release. The Court is encouraged by Freeman's efforts to address her mental health and chemical dependency issues and to advance her education. The skills and attitude Freeman is acquiring will no doubt improve her remaining time in custody and assist her in finding steady employment and leading

---

[1] Freeman's oldest daughter wrote a particularly mature, well reasoned, and moving letter to the Court describing the impact that her mother's incarceration has had on her, as well the justifiable pride she feels for Freeman's efforts toward rehabilitation. See Letter [Docket No. 483].

a productive life upon release. Although Freeman's progress toward rehabilitation is commendable, it is not an extraordinary and compelling reason to reduce her sentence.

### 3. Sentencing Factors

Even if Freeman could show extraordinary and compelling circumstances, the Motion would be denied because the sentencing factors in 18 U.S.C. § 3553(a) weigh against Freeman's release. The § 3553(a) sentencing factors include "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Freeman was involved in a large and violent drug trafficking organization that employed firearms to further their drug trafficking activities. Her 120-month sentence is already a substantial downward departure from the bottom of the sentencing guideline range of 188 to 235 months. Releasing Freeman after she has only served about one third of her sentence would not reflect the seriousness of her crime or provide just punishment.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Rochelle Freeman's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1) [Docket No. 481] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated: May 4, 2021